Stephen M. Ferguson (*pro hac vice* to be filed)
stephen.ferguson@hnbllc.com
**HAGAN NOLL & BOYLE LLC**
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

David A. Van Riper (California Bar No. 128059)
dave@vanriperlaw.com
**VAN RIPER LAW**
1254 Irvine Blvd., Suite 200
Tustin, California 92780-3571
Telephone: (714) 731-1800
Facsimile: (714) 731-1811

Attorneys for Plaintiffs DISH Network L.L.C.
and Sling TV L.L.C.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C. and SLING TV L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> MARCELINO CHELINO PADILLA and DANNY CONTRERAS, <br><br> Defendants. | **Case No.** <br><br> **PLAINTIFFS' COMPLAINT FOR:** <br><br> 1) **Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2);** <br><br> 2) **Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(b)(1);** <br><br> 3) **Violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(c), (d)** |

Plaintiffs DISH Network L.L.C. and Sling TV L.L.C. file this action against Defendants Marcelino Chelino Padilla and Danny Contreras, for violations of the anti-trafficking provisions of the Digital Millennium Copyright Act ("DMCA") and the Electronic Communications Privacy Act ("ECPA"). Defendants provide and profit from the sale of illicit streaming services that capture and retransmit Plaintiffs' copyrighted television programming, without authorization, by circumventing Plaintiffs' security measures.

## PARTIES

1.      Plaintiff DISH Network L.L.C. ("DISH") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

2.      Plaintiff Sling TV L.L.C. ("Sling") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

3.      Defendant Marcelino Chelino Padilla ("Padilla") is an individual residing in Corona, California.

4.      Defendant Danny Contreras is an individual residing in Santa Ana, California.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims for violations of the DMCA, 17 U.S.C. § 1201 and the ECPA, 18 U.S.C. § 2511.

6.      Defendants are subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Defendants reside in California and, through their wrongful conduct identified herein, Defendants purposefully directed their conduct towards and purposefully availed themselves of the privileges of conducting business in California, causing injury to Plaintiffs in California.

7.      Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

**PLAINTIFFS' COMPLAINT**

## DEFENDANTS' REBROADCASTING SCHEME

8.    Plaintiffs provide television programming to millions of authorized, fee-paying subscribers of their Sling TV and DISH Anywhere services in the United States using the internet.  Plaintiffs acquire the distribution rights to provide the programming pursuant to license agreements between DISH and various rights holders.  The programming consists of live channels and on demand content and is subject to copyright protections.  Plaintiffs' live channels, whether intended for Sling TV subscribers or DISH Anywhere subscribers, are transmitted over the internet using the same Sling streaming platform ("Channels").

9.    Plaintiffs implement digital rights management ("DRM") technology, with the rights holders' consent, to protect the Channels from unauthorized access, copying and retransmission.  Each DRM technology uses a key-based subscriber authentication and encryption-decryption process to make the Channels accessible to only authorized subscribers that purchase access to the Channels from Plaintiffs and restricts unauthorized access to, copying, and retransmission of the Channels.

10.    Defendants are trafficking in the illicit internet streaming television services that are accessed using the vSeeBox and Tanggula set-top boxes (the "Services").  Padilla traffics in the Services by selling them to resellers including Contreras and to users through Padilla's Facebook page and Facebook groups in which Padilla is an administrator or member including Vsee, Super Box, Tips, Support & Sales (f/k/a Superbox Support & Sales), Superbox Support, and Tanggula TV Box.  Contreras traffics in the Services by selling them to users that contact Defendants.

11.    Padilla advertises the Services with Facebook posts.  The following is an example of one of Padilla's Facebook posts promoting the Services with "Pick up a Stream box, I can ship it to your doorstep. I ship throughout the U.S.," "Let me set you up with a stream box . . . All preloaded, plug and play ready!," and  "Cut the cord forever . . . You get everything with no programming ever required, no monthly fees

**PLAINTIFFS' COMPLAINT**

1  or silly codes, get live local HD channels, sports, movies, tv series, and PPV…(adult

2  section in most models).”



Chelino Padilla
February 17

Pick up a Stream box, I can ship it to your doorstep. I ship throughout the U.S.... Cut the cord
forever, (you just need wifi ) Why a Stream box instead of the firestick? Plug and play ready!
You get everything with no programming ever required, no monthly fees or silly codes, get live
local HD channels, sports, movies, tv series, and PPV...(adult section in most models) Warranty
and customer service are included. Need a service added on your phone or iPad ? I can do that
too...
For more info, Dm me... #Elite2 #V1pro #Tanggulaelite #S3Pro #movies #netflix #hulu #prime
#cutthecord

12.    Defendants sell the Services for a one-time cost of approximately

$350.00. Padilla's Facebook posts emphasize that after the initial payment there are

"no monthly fees" (unlike legitimate pay-television services such as the services

provided by Plaintiffs that charge a monthly subscription fee).

4

13.    Padilla advertises the Services on Facebook as offering "live local HD channels, sports, movies, tv series, and PPV [pay-per-view] . . . (adult section in most models)." Padilla's advertising places an emphasis on converting users from legitimate subscription-based television services such as those provided by Plaintiffs, stating for example "no monthly fees" and "Cut the cord forever."

14.    Padilla advertises the Services on Facebook with photos showing resellers and users his inventory of the Services as shown in the following example:



15.    Padilla advertises the Services on Facebook with raffle contests for users to win the Services for a cost of $25.00 as shown in the following example:



PLAINTIFFS' COMPLAINT

16.     Plaintiffs' investigator sent a private message to Padilla inquiring about the Services that are accessed using the Tanggula set-top box. Padilla responded that he was posting them for a reseller of his named "Danny" with the phone number (714) 391-4344, and the cost was $350.00.

17.     Plaintiffs' investigator then sent a text message to (714) 391-4344, inquiring about the Services that are accessed using the Tanggula set-top box, and received a response that they were available for $350.00 and payment could be sent to him via CashApp at $Dannylittles1503 or via Venmo at dannycontreras03. Plaintiffs' investigator sent $350.00 via CashApp to $Dannylittles1503 and the CashApp transaction confirmed that payment was sent to Contreras. Contreras confirmed that the Tanggula set-top box shipped that would provide access to the Services.

18.     Plaintiffs received the Tanggula set-top box, tested it, and confirmed that the Services intercepted and transmitted Plaintiffs' Channels without authorization.

19.     Identifiers that are unique to Plaintiffs' internet transmissions of the Channels were detected when conducting a technical analysis of the corresponding channels on the Services, thereby confirming that channels transmitted on the Services originated from Plaintiffs. Monitoring conducted on a sampling of channels on the Services showed numerous instances where Plaintiffs' Channels were being retransmitted to users of the Services without Plaintiffs' authorization. Plaintiffs' internet transmissions of the Plaintiffs' Channels on the Services include the following by way of example: AMC Thrillers, Big Ten Network, Bon Appetit, Comedy Dynamics, Electric Now, ESPN, Free Speech TV, HDNet Movies, Maverick Black Cinema, MLB Network, Newsy, NFL Network, Pac-12 Los Angeles, Pac-12 Mountain, Pac-12 Washington, The Design Network, and World Fishing Network.

PLAINTIFFS' COMPLAINT

20.    Plaintiffs' Channels are retransmitted to users of the Services by circumventing the Widevine DRM. The Widevine DRM controls access to Plaintiffs' Channels by requiring Plaintiffs' subscriber to present a valid digital authentication key and license request to Sling's Widevine DRM server to obtain the channel decryption key necessary to unlock a specific Channel. The channel decryption key is provided to Plaintiffs' subscriber in an encrypted communication and upon receipt is not exposed to the subscriber but rather is secured in the content decryption module of the subscriber's Widevine supported device. In addition, the Widevine DRM protects against copying of Plaintiffs' Channels in the ordinary course of its operation by requiring that the encrypted audio-visual segments that make up a Channel are unlocked using the channel decryption key and complied to form the Channel within the confines of the content decryption module, such that Plaintiffs' subscribers can only view the Channel and not retransmit the Channel.

21.    The Widevine DRM and the protection it affords is circumvented using a specially developed computer program that emulates the behavior of a reverse engineered hardware device. The computer program tricks Sling's Widevine DRM server to grant access and provide a channel decryption key by making the server believe the request originated from a legitimate Widevine supported device that would keep the channel decryption key secured (though in reality the request came from the computer program mimicking the reverse engineered hardware). The computer program uses the channel decryption key to unlock the encrypted audio-visual segments that make up the Channel and then compiles the segments to form an unencrypted Channel that is capable of being copied and retransmitted (as opposed to being merely viewed). The unencrypted Channel can be uploaded to a server outside of the Sling platform and retransmitted to any number of users that can receive the Channel without purchasing a legitimate subscription from Plaintiffs.

22.    Upon information and belief, users of the Services are able to receive Plaintiffs' Channels because the Widevine DRM used to protect the Channels from

1  unauthorized access and copying is being circumvented as described above.
2  Additional content provided on the Services is believed to be acquired from other
3  legitimate pay-television providers that use the Widevine DRM through this process
4  of circumvention, which enables the Services to offer thousands of channels and tens
5  of thousands of on-demand programs at a small fraction of the cost charged by
6  legitimate providers that pay to license their content such as Plaintiffs.

7          23.    Defendants were notified of their violations of the DMCA and ECPA
8  and asked to cease and desist from selling, operating, participating in, or supporting
9  the Services, but the Services have continued to operate.

10                              **CLAIMS FOR RELIEF**
11                                  <u>**COUNT I**</u>
12              **Violations of the DMCA, 17 U.S.C. § 1201(a)(2)**

13         24.    Plaintiffs repeat and reallege the allegations in paragraphs 1-23.

14         25.    Plaintiffs use DRM technology to effectively control access to their
15  Channels that include works protected under the Copyright Act.  Plaintiffs are
16  authorized by the copyright owners to control access to the Channels and implement
17  the DRM technology with their consent.

18         26.    Plaintiffs' DRM technology is circumvented to gain access to Plaintiffs'
19  Channels that are retransmitted without authorization to users of the Services.  Upon
20  information and belief, the circumvention targets Plaintiffs' Widevine DRM and
21  represents an essential component or part of the Services.

22         27.    The Services, or at least the component or part of the Services that
23  involve gaining unauthorized access to Plaintiffs' Channels, are primarily designed
24  and produced for the purpose of circumventing the DRM technology that Plaintiffs
25  implement and have no commercially significant purpose or use other than
26  circumventing such DRM technology.

27
28

PLAINTIFFS' COMPLAINT

28.    Defendants violate 17 U.S.C. § 1201(a)(2) by manufacturing, offering to the public, providing, or otherwise trafficking in the Services.  Each sale of the Services constitutes a separate violation of 17 U.S.C. § 1201(a)(2).

29.    Defendants' actions violating 17 U.S.C. § 1201(a)(2) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

30.    Defendants' violations of 17 U.S.C. § 1201(a)(2) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

**COUNT II**

**Violations of the DMCA, 17 U.S.C. § 1201(b)(1)**

31.    Plaintiffs repeat and reallege the allegations in paragraphs 1-23.

32.    Plaintiffs use DRM technology to effectively control copying of their Channels that include works protected under the Copyright Act.  Plaintiffs are authorized by the copyright owners to control copying of the Channels, including distribution and public performance through acts of retransmission, and implement the DRM technology with their consent.

33.    Plaintiffs' Channels are retransmitted without authorization to users of the Services by circumventing Plaintiffs' DRM technology.  Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Services.

34.    The Services, or at least the component or part of the Services involving unauthorized retransmission of Plaintiffs' Channels to users of the Services, are primarily designed and produced for the purpose of circumventing the protection afforded by the DRM technology that Plaintiffs implement and have no commercially significant purpose or use other than circumventing such protection.

**PLAINTIFFS' COMPLAINT**

Case 8:24-cv-01028-JVS-ADS    Document 1    Filed 05/10/24    Page 10 of 12    Page ID #:10

35.    Defendants violate 17 U.S.C. § 1201(b)(1) by manufacturing, offering to the public, providing, or otherwise trafficking in the Services.  Each sale of the Services constitutes a separate violation of 17 U.S.C. § 1201(b)(1).

36.    Defendants' actions violating 17 U.S.C. § 1201(b)(1) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

37.    Defendants' violations of 17 U.S.C. § 1201(b)(1) were willful.  Such violations have damaged Plaintiffs in an amount to be proven at trial.  Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(b)(1).

## COUNT III

### Violations of the ECPA, 18 U.S.C. §§ 2511(1)(c), (d), and 2520

38.    Plaintiffs repeat and reallege the allegations in paragraphs 1-23.

39.    The Channels retransmitted on the Services are electronic communications intercepted from Plaintiffs for purposes of committing violations of the DMCA, ECPA, and other tortious acts.

40.    Defendants were notified of their violations of the DMCA and ECPA and asked to cease and desist, but the Services have continued to operate.

41.    By continuing to sell or activate the Services, Defendants intentionally disclosed or used Plaintiffs' Channels, knowing or having reason to know that they were obtained through interception.

42.    Defendants violated 18 U.S.C. §§ 2511(1)(c), (d), and 2520 for tortious and illegal purposes, or for commercial advantage or private financial gain.

43.    Defendants' violations of 18 U.S.C. §§ 2511(1)(c), (d), and 2520 were intentional, and therefore illegal and prohibited. Such violations have damaged Plaintiffs in an amount to be proven at trial.  Unless restrained and enjoined, Defendants will continue to violate 18 U.S.C. §§ 2511(1)(c), (d), and 2520.

## PRAYER FOR RELIEF

Plaintiffs request a judgment against Defendants as follows:

PLAINTIFFS' COMPLAINT

A.    For a permanent injunction, as authorized by Fed. R. Civ. P. 65, 17 U.S.C. § 1203(b)(1), and 18 U.S.C. § 2520(b)(2), that prohibits Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with them that receives actual notice of the order, from:

        1.    manufacturing, offering to the public, providing, or otherwise trafficking in the Services, vSeeBox and Tanggula set-top boxes, or any other technology, product, service, device, component, or part thereof that:

            a.    is primarily designed or produced for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

            b.    has at best only limited commercially significant purpose or use other than circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work; or

            c.    is marketed for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

        2.    intentionally disclosing, endeavoring to disclose, using, or endeavoring to use Plaintiffs' Channels knowing or having reason to know that they were obtained through interception.

B.    For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count I and Count II, or (2) statutory damages up to $2,500 for each violation identified in Count I or Court II, pursuant to 17 U.S.C. § 1203(c)(2) and (c)(3)(A);

C.    For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count III, or (2) statutory damages of whichever is the greater of $100 per day for each day of violation or $10,000, pursuant to 18 U.S.C. § 2520(c)(2);

11                **PLAINTIFFS' COMPLAINT**

D.    For an order awarding Plaintiffs punitive damages pursuant to 18 U.S.C. § 2520(b)(2);

E.    For an order awarding Plaintiffs their attorneys' fees and costs under 17 U.S.C. § 1203(b)(4)-(5) and 18 U.S.C. § 2520(b)(3);

F.    For an accounting of all profits and other benefits that Defendants received from the wrongful conduct identified in this complaint;

G.    For pre and post-judgment interest on all damages awarded by the Court, from the earliest date permitted by law at the maximum rate permitted by law; and

H.    For such additional relief as the Court deems just and equitable.

Dated: May 8, 2024

Respectfully submitted,

By: /s/ David A. Van Riper

David A. Van Riper (California Bar No. 128059)
dave@vanriperlaw.com
**VAN RIPER LAW**
1254 Irvine Blvd., Suite 200
Tustin, California 92780-3571
Telephone: (714) 731-1800
Facsimile: (714) 731-1811

Stephen M. Ferguson (*pro hac vice* to be filed)
stephen.ferguson@hnbllc.com
**HAGAN NOLL & BOYLE LLC**
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Attorneys for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.

PLAINTIFFS' COMPLAINT